IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Shera H. Lee, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 4:10-2176-HMH-TER |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina.[1]  Shera H. Lee ("Lee") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  In his Report and Recommendation, Magistrate Judge Rogers recommends affirming the Commissioner's decision.  Lee objects to the Report and Recommendation.  For the reasons stated below, the court adopts the Report and Recommendation and affirms the Commissioner's decision.

---

[1] The magistrate judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

1

I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 13-27), and summarized as follows. At the time of the ALJ's decision on September 8, 2009, Lee was a thirty-four-year-old woman with a high school education and past relevant work as a cloth cutter, material handler, and a secretary. (Id. at 34, 35, 207.) Lee alleges that she has been disabled since June 1, 2007,[2] due to "mental conditions and back problems."[3] (Id. at 183.)

On March 20, 2007, Lee filed an application for DIB and SSI. (Id. at 32.) The application was denied initially and on reconsideration. (Id. at 94-97, 98-99, 102, 104.) On September 8, 2009, after a hearing on June 18, 2009, the ALJ found that Lee was not disabled within the meaning of the Social Security Act because Lee could perform a significant number of jobs in the national economy. (R. at 25.) The Appeals Council denied Lee's request for review of the ALJ's decision on June 21, 2010, thereby making the determination of the ALJ the final decision of the Commissioner. (Id. at 1.) Lee filed the instant action on August 19, 2010.

---

[2] Initially, Lee alleged disability beginning May 20, 2002. However, at the hearing, Lee amended her onset date to June 1, 2007. (R. at 13, 125.)

[3] The ALJ found that Lee suffered from the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left hip, chronic soft tissue injury to the right shoulder, obesity, depression/bipolar disorder[,] posttraumatic stress disorder, and somatoform disorder." (Id. at 16.) Lee developed post traumatic stress disorder ("PTSD") as a result of a motor vehicle accident in which she struck and killed a small child and was later incarcerated for reckless homicide, and the suicide of her husband. (Id. at 33, 46, 204.)

## II. REPORT AND RECOMMENDATION

The magistrate judge recommends affirming the Commissoner's decision finding that the ALJ properly considered the opinions of Lee's treating physician and Lee's credibility. Accordingly, the magistrate judge recommends affirming the Commissioner's decision. (Report and Recommendation, generally.)

## III. DISCUSSION OF THE LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). Accordingly, the court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations and quotation marks omitted). Hence, absent any error of law, if the Commissioner's findings are supported by substantial evidence, the court should uphold the Commissioner's findings even if the court disagrees. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Objections

Lee objects to the magistrate judge's conclusion, alleging that the ALJ failed to

3

(1) properly consider the opinions of Dr. Jane Wasson ("Dr. Wasson"), Lee's treating physician; (2) properly consider Lee's subjective complaints of pain; and (3) properly analyze the impact of her mental impairments on her residual functional capacity ("RFC"). (Objections, generally.)

### 1. Opinion of Treating Physician

Lee objects that the ALJ failed to properly consider Dr. Wasson's opinion regarding her limitations. (Id. at 1-3.) As noted by the ALJ, Dr. Wasson found that Lee could

> lift only 5 to 7 pounds; can stand and/or walk only 2 hours out of an 8-hour workday; can sit for only 1 hour without interruption; can never kneel, crouch, stoop, or crawl" is "unable to lift/push/pull/stand/walk any length of time"; has "pain and/or fatigue" that prevents her from engaging in full-time work; and has serious limitations in multiple mental work functioning areas.

(R. at 24, 670-75.) The ALJ must afford controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the record and is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2); see also Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and consistent] with the other substantial evidence in the record . . . [it is not] entitled to 'controlling weight.'"). "[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, at *5 (1996).

The ALJ provided for Lee's pain and other symptoms by limiting her to "light exertional activities" with "exertional and postural limitations."[4]  (R. at 22.)  Further, the ALJ provided for Lee's psychological limitations "by limiting the claimant to simple, routine, repetitive tasks with only occasional interaction with the general public, occasional decision making, and occasional changes in work setting."  (Id.)  The ALJ afforded little weight to Dr. Wasson's opinion for "multiple reasons."  The ALJ noted that

> Dr. Wasson's opinions are somewhat inconsistent with each other.  For example, Dr. Wasson stated that the claimant is seriously limited with regard to use of judgment and has no ability to function independently or maintain attention and concentration.  She also opined that the claimant has no ability to behave in an emotionally stable manner.  Yet, in the same document, Dr. Wasson opined that the claimant has the ability to manage benefits independently in her own best interest.  Dr. Wasson also provided that her conclusions are, at least partially, based upon the claimant's "reported pain."  As discussed supra, the evidence establishes that the claimant's subjective complaints are not wholly credible.  Moreover, the extreme limitations to which [] Dr. Wasson opined are not supported by her own treatment notes.  As discussed, Dr. Wasson's recent notes indicate that the claimant engaged in exercise and significant care giving activities for her grandmother.  Such activities do not fit within the limitations prescribed by Dr. Wasson.  Finally, Dr. Wasson's conclusions are inconsistent with the other evidence of the claimant's activities, previously discussed.

(Id. at 24-25.)

In her objections, Lee submits that Dr. Wasson's opinions regarding her physical and psychological limitations are supported by medical findings and should have been accorded controlling weight.  Dr. Wasson opined that Lee had poor to no ability to "[d]eal with the

---

[4] Specifically, the ALJ found that Lee "can lift and/or carry 20 pounds occasionally and 10 pounds frequently;" "can sit, stand, and walk for about 6 hours each out of an 8-hour workday;" "is limited to occasional overhead reaching with her right upper extremity;" "can occasionally climb ladders, ropes and scaffolds and can frequently climb ramp and stairs;" and "can frequently balance, stoop, kneel, crouch and crawl."  (R. at 20.)

public," "[d]eal with work stresses," "[f]unction independently," "[b]ehave in an emotionally stable manner," "[r]elate predicatability," and "[d]emonstrate reliability." (Id. at 673-74.) This opinion is based on Dr. Wasson's finding that Lee is "[e]motionally labile, extreme anxiety, moods vary with bipolar disorder. Becomes upset easily due to PTSD/chronic anxiety." (Id. at 675.)

The ALJ provided ample reasons for discounting Dr. Wasson's opinion. The objective medical evidence is not inconsistent with the ALJ's decision to discount Dr. Wasson's opinion. A few months before her alleged onset date, Lee was seen by Dr. Richard Ruffing ("Dr. R. Ruffing") for back pain, hip pain, and a work-related ankle injury, and Dr. R. Ruffing reported that as of March 2007, Lee was able to return to work without restriction. (R. at 343.) An MRI of April 17, 2007, noted that the lumbar spine was in normal alignment. (Id. at 547.) Further, T11-12 noted that her disc space was flattened with no evidence of cord compression, the L3-4 space was "slightly flattened" with the "central canal remain[ing] within normal limits," and the L5-S1 had a "minimal" bulge that did not "encroach significantly on the central canal." (Id.) The impression was "no significant changes from the prior exam of 12-13-2006." (Id. at 548.) An MRI of the cervical spine performed on November 7, 2008, noted only "mild central canal stenosis and mild bilateral neural foraminal stenosis left greater than right L3-L4" and "minimal central canal stenosis L4-L5. (Id. at 606-07). On January 21, 2009, an x-ray of her hip revealed "nothing acute" and "very minimal degenerative change." (R. at 608.)

Further, Dr. Wasson's June 11, 2008 treatment note provides that Lee is "walking daily" and her August 25, 2008 treatment note states that Lee is "exercising runs stairs walks 1 mile" in an effort to lose weight. (Id. at 625, 634.) Moreover, as noted by the ALJ,

> Dr. Wasson's March and June 2008 notes indicate that the claimant had decreased abduction in her right shoulder due to pain, but otherwise had full range of motion of all joints in all extremities. These notes also indicate that the claimant had no focal deficits, intact cranial nerves, and normal sensation, reflexes, coordination, muscle strength and tone. The claimant presented at Upstate Carolina Medical Center on January 4, 2009, with complaints of back pain after falling down 8 steps. The notes from this visit indicate the claimant: denied focal motor weakness; was in no acute distress; had negative straight leg raises bilaterally; had no paralumbar tenderness or spasms; had intact deep tendon reflexes; ambulated independently and had a normal gait; and reported performing activities of daily living independently.

(Id. at 22.) Lee reported to Dr. James Ruffing ("Dr. J. Ruffing"), a consultative examiner, that she attended church weekly, shopped in stores, had a boyfriend for a year, went to the movies, and talked via the telephone. (Id. at 19, 434.) Moreover, Lee had normal cognitive process speed and grossly intact memory functioning. In addition, Lee could use a debit card and cash to attend to her own finances. (Id. at 434-35.) Dr. J. Ruffing described Lee as "full[y] oriented" with "relevant, coherent, and goal directed" thought processes. (R. at 435.) Dr. J. Ruffing concluded that Lee's "level of emotional distress appears to impair her capacity to focus at times and concentrate. She would struggle to perform more than simple to repetitive tasks. She would struggle to understand, remember, and carry out more than simple to possibly detailed instructions." (Id. at 436.) Based on the foregoing, the ALJ properly considered the opinions of Dr. Wasson and provided a thorough explanation for according her opinion little

weight and according Dr. J. Ruffing's opinion and the other agency consultant opinions more weight.

### 2. Lee's Pain and Credibility

The magistrate judge concluded that the ALJ properly evaluated Lee's subjective complaints of pain and credibility. "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting 20 CFR §§ 416.929(b) & 404.1529(b) (emphasis omitted)). In order "for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*." Id. "It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Id. at 595. If a claimant establishes an underlying impairment that is capable of causing pain,

> subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree . . . , if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, *the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative*.

Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006). Nevertheless,

> [i]n determining the credibility of [a claimant's] statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186, at *1 (1996). Therefore, while an "individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence," when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements lesser weight. Id.; see also Hines, 453 F.3d at 565 n.3 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment . . . ."). In making these determinations,

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that the "individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (1996).

The ALJ found that Lee's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (R. at 21.) The ALJ found "however,

9

[Lee's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Id.) In support of this finding, the ALJ found that

> [t]here is evidence which indicates that the claimant's allegations regarding the severity and limiting effects of her pain and other symptoms are not wholly credible. In this regard, there are inconsistencies in the claimant's statements. For example, at the hearing, the claimant testified that she cannot walk for more than 10 or 15 minutes. Yet, she subsequently testified to walking for exercise. Likewise, at the hearing the claimant testified that her mother does her shopping for her. Yet in her Function Reports she indicated that she goes grocery shopping once a month.

(Id. at 21.) In addition, the ALJ noted that Lee cares for her minor daughter while her mother is at work; "prepare[s] meals for up to 2 hours at a time once or twice weekly; perform[s] housework for 3 to 4 hours on a biweekly basis; washe[s] dishes; and grocery shop[s]." (Id. at 23.) Further, Lee reported visiting with her grandmother and assisting her with her medications, attending school and church functions, and walking for exercise. (Id.) As noted by the ALJ,

> Dr. Wasson's treatment notes also reflect that the claimant engages in significantly more extensive exercise and care giving activities than she acknowledged during the hearing. Regarding the claimant's care for her grandmother, Dr. Wasson's March 19, 2009 notes state: "has been helping with granny every night–no rest." These notes further provide: "pulling on her grandmother stayed 38 [hours] straight during snow." On this date, Dr. Wasson noted in reference to the claimant's obesity that the claimant "promises to walk at Ransom's house." Dr. Wasson's February 19, 2009 notes similarly indicated that the claimant promised to exercise three times per week. Dr. Wasson's October 28, 2008 notes state that the claimant injured her back while picking her grandmother up from the floor. On August 25, 2008, Dr. Wasson noted: "exercising runs stairs walks 1 mile." June 2008 notes providing that the claimant was "walking daily."

(R. at 23.)

Lee objects that the ALJ's "wholesale rejection" of Lee's testimony that "she cannot stand or sit long due to her pain" because "[w]hen she stands pain shoots up her back and down her legs" and "[w]hen she sits the pain shoots upward," based on "[i]nconsequential differences in testimony and documentary evidence" was improper. (Objections 6.) However, the court finds that the evidence cited by the ALJ was not inconsequential and the inconsistent evidence undermines Lee's credibility. In contrast to Lee's report of very limited abilities, the record reflects that Lee reported exercising, attending to her activities of daily living, and at times, caring for others. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she attended church, read, watched television, cleaned house, washed clothes, visited relatives, fed pets, cooked, managed finances, and performed stretching exercises); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life"). For the reasons set forth above, the court finds that the ALJ properly evaluated Lee's pain and credibility.

**3. Residual Functional Capacity Assessment with respect to Mental Impairments**

In addition, Lee objects that the ALJ did not adequately consider her "severe mental impairments in the form of depression, bipolar disorder, posttraumatic stress disorder, and somatoform disorder" in assessing her residual functional capacity ("RFC") under SSR 96-8p and SSR 85-15. (Objections 3.) Lee submits that the ALJ failed "to make specific findings regarding the ability to perform . . . work-related activities." (Id. 4.) SSR 96-8p provides that "nonexertional capacity must be expressed in terms of work-related functions." 1996 WL

374184, at *6 (1996). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.

In stating Lee's RFC, the ALJ found that, with respect to her mental impairments, Lee "is limited to performing simple, routine, repetitive tasks in work environments requiring no more than occasional interaction with the general public. Finally, I find that the claimant is limited to low stress work, defined as work requiring only occasional decision making and occasional changes in work setting." (R. at 20.) The ALJ further explained:

> I have . . . provided for the symptoms arising from the claimant's mental limitations by limiting the claimant to simple, routine, repetitive tasks with only occasional interaction with the general public, occasional decision making, and occasional changes in work setting. The evidence does not establish the need for any greater mental work-related restrictions. In this regard, Dr. James Ruffing described claimant's depression as "moderate." As discussed above, Dr. Ruffing's report demonstrates that the claimant: attends church; shops; goes to movies; talks on the telephone; can complete an intake questionnaire; has relevant, coherent and goal directed thought processes; and has normal cognitive processing speed and grossly intact memory. Dr. [C. David] Tollison likewise reported that the claimant was alert, responsive, and oriented and displayed grossly intact memory. At the hearing, the claimant acknowledged the medications she takes for her mental symptoms are effective in relieving her symptoms at times. She also acknowledged having at least one female and one male friend. Contrary to the claimant's testimony, the evidence does not show that the claimant suffers from chronic panic attacks occurring multiple times per week.

(Id. at 22.) Further, as noted above, the ALJ expressly considered Dr. J. Ruffing's finding that Lee "would struggle to perform more than simple to repetitive tasks [and] would struggle to understand, remember, and carry out more than simple to possibly detailed instructions." (Id. at 24.) The ALJ adequately stated Lee's RFC with respect to her nonexertional limitations

because her RFC is expressed in terms of work-related functions. See West v. Astrue, No. 8:10-1442-DCN, 2011 WL 4482494, at *4 (D.S.C. Sept. 27, 2011) (unpublished) ("The Administration requires the ALJ to make a reasoned assessment in determining non-exertional capacity. The ALJ easily met this burden in his thorough narrative detailing numerous mental examinations and reports and expressing his findings on the ultimate issue."); Cowgar v. Comm'r of Social Sec. Admin., Civil Action No. 1:07CV59, 2008 WL 4283324, at *19 (N.D. W. Va. Sept. 17, 2008) (unpublished) (finding that the "ALJ's RFC followed the directives of SSR 96-8p and provided specific work-related functions" in finding that "Cowgar could work 'in a low stress environment with no production line type of pace or independent decision making responsibilities,' was 'limited to unskilled work involving only routine and repetitive instructions and tasks,' and had 'no more than occasional interaction with others'"). Further, the ALJ provided a thorough explanation of how he determined Lee's RFC. Based on the foregoing, the court finds that the ALJ's decision is supported by substantial evidence and adopts the magistrate judge's Report and Recommendation.

It is therefore

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED**.

             s/Henry M. Herlong, Jr.
             Senior United States District Judge

Greenville, South Carolina
December 14, 2011